UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
In re:

SHON I. & LESLIE L. McLAIN,

                                         Debtors.

----------------------------------------------------------

Chapter 13
Case No. 06-13453

APPEARANCES:

DeVALL & DeVALL                         David DeVall, Esq.
*Attorneys for the Debtors*
59 Franklin Street
Saratoga Springs, NY 12866

DEILY, MOONEY & GLASTETTER, LLP     Mark D. Nizer, Esq.
*Attorneys for eCast Settlement Corp.*
8 Thurlow Terrace
Albany, New York 12203

ANDREA E. CELLI, ESQ.
*Chapter 13 Standing Trustee*
350 Northern Blvd.
Albany, NY 12204

Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      Currently before the court for consideration is confirmation of the second amended chapter 13 plan proposed by Shon and Leslie McLain ("Debtors"). Andrea E. Celli, chapter 13 standing trustee ("Trustee"), and eCast Settlement Corporation ("eCast" or "Creditor"), as agent for Bank of America/FIA Card Services, formerly MBNA, both filed objections to confirmation on the grounds that the proposed plan fails to devote all of the Debtors' "projected disposable income" to be received in the "applicable commitment period" within the meaning of 11 U.S.C.

§ 1325(b)(1)(B).[1]  The court has jurisdiction over this core matter pursuant to 28 U.S.C.

§§ 157(a),(b)(1),(b)(2)(L), and 1334.

## Facts

This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which became effective on October 17, 2005.  The relevant facts are not in dispute.[2]  To briefly summarize, the Debtors filed a voluntary chapter 13 petition on December 21, 2006.  On the same day, the Debtors filed their schedules, plan, and Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form B22C) known as the means test.  (Nos. 1, 2, and 3.)  The Debtors scheduled unsecured debt of approximately $106,000.00.  The Debtors' original plan provided for monthly plan payments of $250 for a period of 60 months.[3]  The original plan also provided for the holders of the Debtors' mortgage and liens against their vehicles to be paid directly by the Debtors and for the surrender of their non-homestead real property.  The Debtors filed an amended plan on December 21, 2006 (No. 11) and subsequently a second amended plan on December 27, 2007 (No. 14).  The Debtors' second amended plan also provides for the mortgage on the Debtors' residence to be paid directly by the Debtors and for the surrender of their non-homestead real property.  The second amended plan clarifies that the debts owing to the holders

---

[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

[2] The court assumes familiarity with the Stipulation of Facts dated March 19, 2007, and filed March 21, 2007.  (No. 26.)

[3] The Stipulation of Facts provides that the Debtors filed their original plan on December 16, 2006, and that it provided for monthly plan payments of $280.  (Stip. of Facts ¶ 8.)  The court assumes the Stipulation of Facts contains typographical errors as these assertions are contrary to the information contained on the court's docket.

of the liens against the Debtors' 2005 Mazda MPV mini van, 2004 Dodge Ram pick up truck, and 1997 Chrysler Sebring are to be paid directly by the Debtors.  The monthly payments for the three vehicles are as follows: MPV - $416.00; Dodge Ram - $378.00; and Sebring - $105.08.  The Debtors' three vehicle loans will all mature during the course of their plan, to wit: 2005 Mazda MPV - June 2011; 2004 Dodge Ram - November 2010; and 1997 Sebring - July 2009.  The second amended plan provides for unsecured debt to be paid at the rate of 5%.

The Debtors' original Form B22C contains a typographical error in that insertion of the state median income was omitted.  The Debtors filed an amended Form B22C on March 14, 2007 to correct this error.  (No. 22.)  Pursuant to the information contained on the Debtors' amended Form B22C, the Debtors are "above median debtors."[4]  As such, the Debtors' amended Form B22C also indicates that their applicable commitment period is 5 years.  The amended Form B22C also reveals that the Debtors have monthly disposable income of $98.00, while their schedules I (Current Income) and J (Current Expenditures) reflect monthly net income of $206.00.

eCcast is the holder of an unsecured claim against the Debtors arising out of debtor Shon McLain's use of a credit card account with a balance of approximately $33,000 as of the petition date.  eCast filed its objection to the Debtors' second amended plan on February 7, 2007, and the Trustee filed her objection to confirmation on February 8, 2007.  The court heard oral argument on the objections of the Trustee and Creditor on March 1, 2007.  Thereafter, the parties agreed to

---

[4]Federal Rule of Bankruptcy Procedure 1007(b)(6) requires that all chapter 13 debtors complete Parts I and III of Form B22C to calculate a debtor's current monthly income and to determine whether a debtor's annualized current monthly income is above or below the median family income of similarly-sized households for the applicable state.

a briefing schedule for submission of memoranda of law.  All of the parties submitted authorities in support of their respective positions.  The final brief was filed on May 25, 2007, at which time this matter was taken under advisement.

## Argument

The Creditor's principle objection to the Debtors' second amended plan is that the Debtors fail to provide for the submission of all their projected disposable income to payments to unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B).  More specifically, Creditor argues confirmation of the Debtors' second amended plan must be denied because the Debtors are not proposing to step up their plan payments to account for the additional projected disposable income they will have available as their vehicle loans are paid off during the life of their plan.  The Creditor notes that "projected disposable income" is not defined in the Bankruptcy Code, but that "disposable income" is defined in § 1325(b)(2) as "current monthly income," less amounts reasonably necessary for a debtor's support, a debtor's dependent's support, a debtor's domestic support obligation, qualifying charitable contributions up to a specified limit, and the continued viability of a debtor's business.  The Creditor also points out that "current monthly income" ("CMI") is defined in § 101(10A) as the average monthly income that the debtor received during the 6-month period prior to filing a petition less certain benefits, not applicable in this case.  Creditor argues that although CMI requires a historical six month average, for purposes of confirming a plan, the court should consider the Debtors' anticipated income.  Creditor relies on *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), and its progeny to support its position.  Creditor asserts that *Hardacre* stands for the proposition that disposable income, as defined in

4

§ 1325(b)(2), is only a starting point, and a debtor's actual current financial picture, as reflected on a debtor's schedules I and J is, in effect, the end point. Creditor argues that in the case *sub judice*, the Debtors' payoff of their three car loans during the course of their plan will free up additional funds that must be committed to the plan. More specifically, Creditor claims that the plan payment should increase by $378.00 in approximately month 46, when the Dodge Ram should be paid off, and by an additional $416.00 in approximately month 50, when the loan for the Mazda MVP should be paid off.[5]

Relying upon *Neary v. Ross-Tousey (In re Ross-Touhey)*, 368 B.R. 762 (E.D. Wis. 2007), the Creditor also asserts that debtors may not deduct a "transportation ownership/lease expense" for purposes of the means test if they in fact did not finance the purchase of, or lease, their automobile. Thus, Creditor argues it follows that when the Debtors' vehicle loans are satisfied, their plan payments should be adjusted upward by corresponding amounts so that all of their projected disposable income is properly applied to make payments to unsecured creditors. The Trustee's arguments parallel those of the Creditor. Based upon all of its arguments, Creditor asserts that confirmation should also be denied under § 1325(a)(1) as the Debtors are unable to satisfy their burden of establishing that all of the requirements for confirming a plan have been met.

The Debtors rely upon *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006), *In re*

---

[5]Creditor does not argue for an increase in the Debtors' plan payment in approximately month 31 when the loan for their Sebring is expected to mature. The court assumes this is because the Debtors did not provided for the deduction of this expense on schedule J. The court further assumes this is because the Debtors' first amended plan provided for the surrender of the Sebring. A review of the court's docket indicates that an amended schedule J has not been filed with the court.

*Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), and *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C. 2006), for the proposition that "disposable income" is a historic number based on a debtor's current monthly income as defined in § 101(10A).  Accordingly, the Debtors assert that projected disposable income is a number derived from the past and simply projected into the future.  On that basis, the Debtors contend that the financial snapshot taken at confirmation would not take into account any anticipated post-petition changes in their financial situation.

Additionally, the Debtors argue that Form B22C already takes into consideration the retirement of their vehicle loans as item 47 of the means test calls for a debtor to schedule monthly payments on secured claims, but limits the amount to that which is "contractually due" within the 60 months following the filing of the bankruptcy case, divided by 60.  It is the Debtors' position that this computation accounts for an increase in the Debtors' disposable income.  Lastly, the Debtors contend that it is undisputed that a vehicle expense is necessary and reasonable.  Thus, it would be inequitable and unreasonable to determine that the Debtors will not have vehicle expenses once their loans are paid off and essentially prejudge at confirmation the condition and status of each of their vehicles years into the future.

**Discussion**

The parties have stipulated that the precise issue before the court is whether a plan that does not propose to "step up" payments after vehicle loans mature during the life of the plan may be confirmed.  (Stip. of Facts ¶ 3.)  In order for the court to confirm a plan over the objection of the trustee or a holder of an unsecured claim, a debtor must pay each allowed unsecured claim in full, 11 U.S.C. § 1325(b)(1)(A), or devote all projected disposable income to be received in the applicable commitment period to make payments to unsecured creditors, 11 U.S.C.

§ 1325(b)(1)(B). The Debtors have not proposed a 100% plan; thus, they must devote all of their projected disposable income to be received in the applicable commitment period to make payments to their unsecured creditors pursuant to § 1325(b)(1)(B).

Subsequent to the parties briefing the issue in this case, the court rendered *In re Green*, No. 06-11591 (Bankr. N.D.N.Y. Aug. 29, 2007), which agreed, for the most part, with the *Alexander* analysis. Specifically, *Green* held, in relation to the issue in the current case, that disposable income and projected disposable income are interrelated and are based on historical numbers as mandated in § 1325(b). *Id.* Applying the court's analysis in *Green* to the case *sub judice* leads to the conclusion that financial events occurring over the course of a debtor's plan would have no relevance to a debtor's plan payment necessary for confirmation purposes. *Id.* Future events simply do not mesh with the backward glance required by § 1325(b)(1)(B) at confirmation. Thus, the apparent liberation of debtor monies by the proposed retirement of automotive loans during the life of a plan is not an impediment to confirmation for purposes of § 1325(b)(1)(B).[6] As the Debtors' second amended plan provides for monthly plan payments of $250 for a period of 60 months, the court finds that the Debtors have satisfied § 1325(b)(1)(B).

Additionally, the Creditor's argument regarding a transportation ownership/lease expense on Form B22C is misplaced. Above-median debtors must calculate disposable income by using

---

[6] The current case involves a § 1325(a) and (b) confirmation issue. As the court indicated in *Green*, precedent exists for the proposition that § 1325(b) does not apply to a § 1329 modification which would mean instead of utilizing a debtor's historical finances, the court would instead look to the accuracy of a debtor's current financial picture. *In re Green*, No. 06-11591, slip op. at 12 n.11 (Bankr. N.D.N.Y. Aug. 29, 2007). Whether to adopt this reasoning must await another decision on another day.

the means test provided for in § 707(b)(2) and contained on Form B22C. 11 U.S.C. § 1325(b)(3). The core premise that eCast relies upon is that a debtor may not deduct as an expense from income an allowance for automobile ownership when a debtor's vehicle is owned outright. This is a controversial issue without consensus,[7] and that question is not before the court. Clearly though, in the instant case, the Debtors do not own the cars in question free and clear, and they are paying these secured obligations. The expenses exist for Form B22C purposes and have been properly reflected in the Debtors' disposable income/projected disposable income analysis. Also, as indicated by the Debtors, it would appear that, even if the early payoff of secured loans were relevant to a disposable income analysis, the Form B22C process has already factored that in by calculating the amounts contractually due on the Debtors' automobile loans in the 60 month period following commencement of their case divided by 60. *See In re Brady*, 361 B.R. 765, 775 (Bankr. D.N.J. 2007).

The Creditor's citations to *In re Rothman*, 206 B.R. 99 (Bankr. E.D.Pa. 1997) and *In re Williamson*, 296 B.R. 760 (Bankr. N.D. Ill. 2003) regarding "step-up" plans are similarly misplaced because, as pre-BAPCPA cases, they bear no relevance to the post-BAPCPA disposable income analysis under § 1325(b)(1)(B).

## Conclusion

Based on the above and the reasoning in the court's *Green* decision, the objections of the

---

[7] For an examination of this issue *see e.g. In re Hylton*, ___ B.R. ___, No. 07-70320, 2007 WL 2669458 * 3 (Bankr. W.D.Va. Aug. 22, 2007).

Trustee and eCast are overruled, and the Debtors' second amended plan is confirmed.

It is so ORDERED.

Dated: 10/24/2007

                                                         /s/ Robert E. Littlefield, Jr.
                                                  Hon. Robert E. Littlefield, Jr.
                                                  U.S. Bankruptcy Judge

CERTIFICATE OF SERVICE

THE UNDERSIGNED IN THE OFFICE OF THE BANKRUPTCY JUDGE FOR THE NORTHERN DISTRICT OF NEW YORK CERTIFIES THAT A COPY OF THE ATTACHED DOCUMENT WAS SERVED TODAY ON THE PARTIES NAMED BELOW VIA FIRST CLASS MAIL:

Shon I. And Leslie L. McLain
32 Friar Tuck Way
Saratoga Springs, NY 12866


THE ATTACHED DOCUMENT HAS BEEN FILED WITH THE CLERK OF THE BANKRUPTCY COURT AND WILL BE ENTERED ON THE COURT'S DOCKET USING THE CM/ECF SYSTEM, THEREBY, UPON ENTRY, GENERATING ELECTRONIC NOTIFICATION TO THE PARTIES NAMED BELOW:

| | |
|---|---|
| David DeVall, Esq. | Ddevall3@nycap.rr.com |
| Mark D. Nizer, Esq. | Mnizer@deilylawfirm.com |
| Francesco Fabiano | ffabiano@fabianolaw.com |
| Amy E. Przewozny | bkincoming@mbaum.com |
| Dian G. Adams | USTPRegion02.AL.ECF@USDOJ.GOV |
| Andrea E. Celli | legal@ch13albany.com |

DATED: 10/24/2007                                BY: /s/ mtangorre